UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-106 (NEB/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(1) OLUMIDE OBIDARE,
A/K/A REMY ADAMSON,
A/K/A MICHEAL BRYAN,
A/K/A M.H.,
A/K/A REMY JENSON,
A/K/A JADEN MICHEL,
A/K/A MATTEW MIHEL,
A/K/A ISRIAELI MIKEL,
A/K/A ALLEN PETERSON,
A/K/A DANIEL THOMPSON,
A/K/A DON WILLIAMS,

    Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and OLUMIDE OBIDARE (hereinafter referred to as the "defendant"), agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to enter a plea of guilty to Count 1 of the Indictment, which charges Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349, and Count 13, which charges Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A. In exchange for the



defendant's plea and concessions made in this agreement, the United States agrees to move to dismiss Counts 2-3 and 6-12 of the Indictment against the defendant at sentencing.

2. **Factual Basis.** The defendant agrees that the allegations in the Indictment, incorporated here by reference, including in the counts to be dismissed at sentencing, and the following summary, fairly and accurately set forth the defendant's offense conduct and a factual basis for the guilty plea. The defendant further agrees that these facts, and those set forth in the paragraphs below, are true and could be established beyond a reasonable doubt if the case were to proceed to trial:

   a. At all times relevant, the defendant lived outside the State and District of Minnesota.
   b. Beginning in and around 2016 and continuing until at least in and around May 4, 2021, the defendant conspired with codefendant Stephen Oseghale and others to devise and engage in a scheme and conspiracy to defraud individuals and businesses in the District of Minnesota and elsewhere. During this period, defendant Obidare, with his coconspirators, defrauded victims of at least $2,114,893.91.
   c. It was in furtherance of the conspiracy that defendant Obidare used and provided to coconspirators fictitious identities and stolen identity information of real people to contact individual victims in the District of Minnesota and elsewhere, using email, social media, online dating applications, and other Internet-based methods of communication.
   d. Among the fictitious identities defendant Obidare used were "Remy Adamson," "Micheal Bryan," "Remy Jenson," "Jaden Michel," "Mattew Mihel," "Isriaeli Mikel", "Allen Peterson," "Daniel Thompson," and "Don Williams."
   e. The defendant personally used the identity of M.H., a real person, whom he impersonated on multiple occasions in order to obtain false documents and pursue false and fraudulent romantic relationships online with individual victims.
   f. The defendant persuaded individual romance fraud victims to send money for a variety of purposes, including to pay for purported legal fees and other costs related to travel, business, and claims of inheritance. The

2

defendant then diverted a portion of the funds and divert the remainder to his coconspirators, as further described below.
g. In furtherance of the conspiracy, the defendant obtained false identification documents, including foreign passports and driver's licenses. The defendant used these false identification documents to open bank accounts at various banks in the United States. The defendant also assisted others, including codefendant Oseghale, in obtaining such documents and opening U.S. bank accounts.
h. In furtherance of the conspiracy, the defendant directed coconspirators, including codefendant Oseghale, to transfer proceeds of online romance scams and business email compromises to U.S. bank accounts in false identities and under the defendant's control. Defendant Obidare would then divert these funds to his own use and that of his coconspirators.
i. For example, it was in furtherance of the conspiracy that defendant Obidare directed approximately $151,600 in romance scam proceeds from victim J.H. into accounts under his control in the false identities of "Remy Adamson," "Isriaeli Mikel," and "Allen Peterson."
j. Also in furtherance of the conspiracy, defendant Obidare also directed approximately $87,600 in romance scam proceeds from victim C.F. into accounts under his control in the false identities "Isriaeli Mikel" and "Allen Peterson."
k. It was also in furtherance of the conspiracy that between on or about October 13, 2017, and November 8, 2017, defendant Oseghale and his coconspirators used the internet to direct approximately $837,988.91 in business email compromise funds from Victim Business 1 into accounts under his control and diverted the funds to his own use and that of his coconspirators. Victim Business 1 was an industrial adhesives company based in Saint Paul, Minnesota. Victim Business 1 believed it was paying valid invoices to Victim Business 2, when in fact the invoices were false and transmitted via internet in furtherance of the conspiracy to obtain funds to which defendant Obidare and his coconspirators were not entitled. The fraudulent invoices, associated communications, and wire transfers transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire communication in interstate commerce, including between Maryland, Minnesota, and Tennessee.
l. Once funds obtained from individual and business victims were in accounts under the control of defendant Obidare and his coconspirators, the defendant diverted those funds to his and his coconspirators' use. For example, on October 24, 2017, defendant Obidare, who was in Maryland, purchased a MoneyGram money order ending in -5892[4] for approximately $900 using funds from an account in the false identity

3

"Remy Jenson." The money order was directed to Z.N., Obidare's wife. The purchase transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire communication in interstate commerce, including between Maryland and St. Louis Park, Minnesota.

m. On December 13, 2017, the defendant used the internet to transmit the name and bank account number belonging to victim S.H. to codefendant Oseghale, which they used to transfer romance scam funds from S.H. to their use and benefit. These communications occurred via the internet, and transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire communication in interstate commerce.

3. **Waiver of Pretrial Motions.** The defendant understands and agrees he has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon the concessions of the United States contained herein, the defendant knowingly, willingly, and voluntarily withdraws previously filed motions and gives up the right to litigate pretrial motions.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that the defendant has the right to plead not guilty and go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses and subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that the defendant has the right to an attorney at every stage of the proceedings and, if necessary, one will be appointed to represent the defendant. The defendant understands that by pleading guilty, the defendant

4

specifically and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete admission of guilt and if the Court accepts the guilty plea, the Court will find the defendant guilty without a trial.

5. **Statutory Penalties.** The parties agree that the following statutory penalties apply:

    a. Count 1 of the Indictment:

        1. A maximum of 20 years' imprisonment;
        2. A maximum of three years' supervised release;
        3. A fine of up to $250,000 or twice the gross pecuniary gain or loss;
        4. A mandatory special assessment of $100;
        5. Payment of mandatory restitution in an amount to be determined by the Court; and
        6. Assessment to the defendant of the costs of prosecution (as defined in 28 U.S.C. §§ 1918(b) and 1920).

    b. Count 13 of the Indictment:

        1. A mandatory minimum term of two years' imprisonment, to be imposed consecutively to any other term of imprisonment;
        2. A maximum of one year's supervised release;
        3. A fine of up to $250,000;
        4. A mandatory special assessment of $100; and
        5. Assessment to the defendant of the costs of prosecution (as defined in 28 U.S.C. §§ 1918(b) and 1920).

6. **Revocation of Supervised Release.** The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

5

7. **Guideline Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

   a. Base Offense Level. The parties agree that the base offense level for conspiracy to commit wire fraud as alleged in Count 1 is 7. USSG §§ 2X1.1(a); 2B1.1(a)(1).

   b. Specific Offense Characteristics. The parties agree that the following upward adjustments apply:

      i. 16 levels because the loss was more than $1,500,000 and less than $3,500,000. USSG §2B1.1(b)(1)(I).
      ii. 4 levels because the offense caused substantial financial hardship to five or more victims. USSG §2B1.1(b)(1)(B).
      iii. 2 levels because a substantial part of a fraudulent scheme was committed from outside the United States; or the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. USSG §§2B1.1(b)(10)(B)-(C).
      iv. 2 levels because the offense involved the production or trafficking of any unauthorized access device or counterfeit access device; or the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification USSG §§2B1.1(11)(B)-(C).

   c. Chapter 3 Adjustments. The parties agree that the following adjustments apply:
      i. Aggravating Role. An upward adjustment of 3 levels because the defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive. USSG §3B1.1(b).

6

    ii. <u>Acceptance of Responsibility.</u> The government agrees to recommend that the defendant receive a 3-level reduction for acceptance of responsibility. However, the defendant understands and agrees that this recommendation depends upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of responsibility. USSG §3E1.1.

d. <u>Criminal History Category.</u> Based on information available at this time, the parties believe that the defendant's criminal history category is I. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence that should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. USSG §4A1.1.

e. <u>Guideline Range.</u> If the adjusted offense level is 31, and the criminal history category is I, the Sentencing Guidelines range for conspiracy to commit wire fraud is 108-135 months' imprisonment. After accounting for the mandatory minimum term applicable for aggravated identity theft, the applicable guideline range is 132-159 months' imprisonment, in Zone D.

f. <u>Fine Range.</u> Based on the Sentencing Guidelines calculations above, the fine range is $30,000-$300,000. USSG §5E1.2(c).

g. <u>Supervised Release.</u> The Sentencing Guidelines acknowledge that the Court may order a term of supervised release of no more than three years for Count 1, and no more than one year for Count 13. USSG §§5D1.1(b) and 5D1.2(a)(2); 18 U.S.C. § 3583(b)(2).

h. <u>Sentencing Recommendation and Departures.</u> The parties reserve the right to make a motion for departures or variances from the applicable

7

Guidelines and to oppose any such motion made by the opposing party. The parties reserve the right to argue for a sentence outside the applicable Guidelines.

8. **Discretion of the Court.** The foregoing Sentencing Guidelines stipulations bind the parties but not the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Special Assessment.** The defendant is required to pay a special assessment in the amount of $100.00 for each felony count of conviction, which becomes due and payable upon sentencing. 18 U.S.C. § 3013; USSG §5E1.3.

10. **Restitution.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant agrees that he owes at least $2,114,893.91 in restitution, and that he will enter into a stipulation to pay restitution in at least that amount prior to the date of sentencing. The defendant understands and agrees that pursuant to 18 U.S.C. § 3663A(a)(3), the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named

8

in the Indictment or the specific count of conviction. The defendant represents that the defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court. The defendant agrees to complete a financial statement fully and truthfully within 30 days of entering a guilty plea in this case. The defendant also agrees to participate fully and truthfully in a deposition regarding his assets prior to sentencing if requested by the United States.

11. **Forfeiture.** The defendant agrees to forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of Count 1, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c). If any property is unavailable for forfeiture, the defendant agrees that the United States shall be entitled to seek the forfeiture of substitute property as provided for in 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

12. **Waiver of Venue.** Recognizing that the criminal conduct in this case occurred in the State and District of Minnesota, as well as in various other states and districts in the United States, the defendant waives all rights to challenge venue in the State and District of Minnesota.

13. **Waivers of Appeal and Collateral Attack.** The defendant acknowledges having been advised by counsel of the defendant's rights, in limited circumstances, to

appeal the conviction or sentence in this case, including the appeal rights conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. The defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, the defendant hereby expressly, knowingly, intelligently, and voluntarily waives these rights, except as specifically reserved herein. The defendant's waiver of these rights includes his waiver of the right to contest restitution and the constitutionality of the statutes to which he is pleading guilty or argue that the admitted conduct does not fall within the scope of the statutes. Nothing in this paragraph bars the defendant from seeking any remedy on appeal or collateral attack with respect to a claim of ineffective assistance of counsel.

14.   **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act (FOIA) and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

15.   **Immigration Consequences.** The defendant understands that pleading guilty may have consequences with respect to his immigration status, including removal or deportation. The defendant understands that no one, including his attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Regardless of any immigration consequences that may follow from his guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

10

16. **Interpreter.** The defendant agrees that if an interpreter is required to assist him in translating this agreement into his native language, then he will request the Court, pursuant to 28 U.S.C. § 1827 ("The Court Interpreter's Act"), to secure the services of a certified interpreter at the Court's expense to verbally translate this agreement and any related documents into his native language. If no such request is made, then the defendant hereby declares that he understands the English language sufficiently well to read and understand this agreement, or that this agreement has been read to him in his native language and that he therefore understands this agreement.

17. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

Date:                                    CHARLES J. KOVATS, JR.
                                         Acting United States Attorney

                                         BY: MIRANDA E. DUGI
                                         (NY: 5140546)
                                         Assistant U.S. Attorney


Date:                                    OLUMIDE OBIDARE
                                         Defendant

11

Date:                                                  *[signature]*
                                              _____
                                              PIPER M KENNEY WOLD
                                              Counsel for the Defendant