UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Criminal No. 21-CR-106 (NEB/DTS)

United States of America,

        Plaintiff,

v.

Olumide Obidare,

**DEFENDANT OBIDARE'S POSITION WITH RESPECT TO SENTENCING**

        Defendant.

## INTRODUCTION

Defendant Olumide Obidare has pled guilty to Conspiracy to Commit Wire Fraud (in violation of 18. U.S.C §1349), as well as Aggravated Identity Theft (in violation of 18. U.S.C §1028A). The Presentence Report ("PSR") assigns Mr. Obidare a total offense level of 31, a criminal history category of I, resulting in a sentencing guideline range of 97-120 months. Mr. Obidare does not dispute the accuracy of this calculation. Mr. Obidare moves the Court for a downward variance of his sentence based on the factors set forth in 18 U.S.C. §3553(a). Mr. Obidare respectfully asks the Court for a 50-month sentence.

## THE BACKGROUND OF OLUMIDE OBIDARE

Olumide Obidare is a young man from Nigeria. He was born in Lagos, Nigeria in June 1993. (PSR at ¶ 59.) Mr. Obidare's mother did her best to raise Olumide and his five siblings. She was destitute, often earning less than a dollar per day. (*Id.* at ¶ 60.) The family had no electricity or running water, and the family shared a living space with 12 people. Due to the family's financial circumstances, Mr. Obidare's mom was forced to send two of her children to

1

live with a relative. One of her children, Ezekiel, died in the custody of a relative. (*Id.*) Mr. Obidare and his two younger siblings were fortunate to remain with their mother. But Mr. Obidare grew up in a war-torn area and he witnessed much conflict. Because of the war, Mr. Obidare and his family moved out of their village. (*Id.* at ¶ 60.)

As a child, Mr. Obidare suffered abuse, which he is uncomfortable discussing. (*Id.* at ¶ 61.) He experienced anxiety and panic attacks for much of his life, a debilitating situation for a young person. (*Id.* at ¶ 71.) Physicians prescribed medication for Mr. Obidare's anxiety, but it continues to cause distress for him. (*Id.* at ¶ 71.).

As a young person, Mr. Obidare always wanted to go to the United States. He applied for a visa in September 2011. In February 2012, he was able to travel to the United States with a goal of earning money for his family back in Nigeria. (*Id.* at ¶ 63.) But Mr. Obidare had no support system in the United States. He was not familiar with Americans, U.S. law or culture. And he struggled.

Mr. Obidare was familiar with fellow Nigerians who had also moved to the United States. He understood that some of his fellow Nigerians were engaged in financial schemes from home. Mr. Obidare started working with some of these people in the U.S. He was a small fish, beholden to others. Mr. Obidare involved himself with these people in an effort to get by, not understanding the harm that he was causing others. As a result, he is before this Court.

## ARGUMENT

**I.    A CONSIDERATION OF THE FACTORS IN 18 U.S.C. § 3553(a) COMPELS A DOWNARD VARIANCE.**

In determining a defendant's sentence, a court must first determine the appropriate sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (citing *Rita v. United States,* 127 S. Ct. 2456 (2007)). After the Court determines the guideline range, it

considers all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by a party, including: the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the guideline range, any relevant policy statement and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. §3553(a).  The Court must impose a sentence that is sufficient but not greater than necessary in light of these factors.  A consideration of these factors compels the conclusion that a sentence significantly below the guideline range is appropriate in this case.

The Guidelines are not only not mandatory on sentencing courts; they are also *not* to be *presumed* reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (emphasis added). The Eighth Circuit Court of Appeals has provided further guidance, "[w]e may not require "'extraordinary' circumstances to justify a sentence outside the Guidelines." *United States v. Feemster*, 572 F.3d 455, 462 (8th Cir. 2009) (quoting *Gall*, 128 S. Ct. at 595). Instead, the district court must "make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 598.  The district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009); *see also United States v. Chaika*, 695 F.3d 741, 746 (8th Cir. 2012).

### A. The Fraud Guideline, Including the Loss Amount, Overstates the Severity of the Offense.

Mr. Obidare's guideline range is driven in large part by the loss amount. Because the intended loss amount exceeds $1,500,000, Mr. Obidare is subject to a 16-level specific offense

3

enhancement under U.S.S.G. § 2B1.1(b)(1)(I). Of course, this loss amount includes all parties' ill-gotten proceeds. Courts are critical of the guidelines' focus on the loss amount, even though there is often little correlation between the loss and the defendant's culpability. "The fraud guidelines have been heavily criticized because they no longer provide a reasonable starting point for sentencing. …Adjustments based on the amount of loss lead to astronomical sentences that have little connection to criminality." *United States v. Spencer*, 700 F.3d 317, 325 (8th Cir. 2012) (Bright, J., dissenting). *See also United States v. Lenaugh*, 2009 WL 296999 (D. Neb. 2009) (noting that loss amount "is not always a reliable proxy for the culpability of an individual defendant" and imposing below guideline sentence in health care fraud conspiracy); *United States v. Watt*, 707 F. Supp. 2d 149, 155 (D. Mass. 2010) (loss amount not always appropriate proxy for culpability).

Adjustments based on the amount of loss lead to astronomical sentences that have little connection to criminality." *United States v. Spencer*, 700 F.3d 317, 325 (8th Cir. 2012) (Bright, J., dissenting). *See also United States v. Lenaugh*, 2009 WL 296999 (D. Neb. 2009) (noting that loss amount "is not always a reliable proxy for the culpability of an individual defendant" and imposing below guideline sentence in health care fraud conspiracy); *United States v. Watt*, 707 F. Supp. 2d 149, 155 (D. Mass. 2010) (loss amount not always appropriate proxy for culpability).

Mr. Obidare's financial gain was **a fraction** of the loss amount. He played a small role in this endeavor. The Government is aware of Mr. Obidare's limited financial gain. Mr. Obidare's lack of financial gain weighs heavily in favor of a downward variance.

### B. A Downward Variance Is Warranted to Reflect Mr. Obidare's Personal History and Characteristics.

"[D]istrict courts are not only permitted, but required, to consider 'the history and characteristics of the defendant.'" *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009)

4

(citing *United States v. White,* 506 F.3d 635, 644 (8th Cir. 2007)).  "'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'"  *Gall*, 128 S.Ct. at 598 (quoting *Koon v. United States*, 518 U.S. 81, 113, 116 S. Ct. 2035 (1996)).

Olumide Obidare was dealt a difficult life: an absent father, lack of basic necessities, and an unstable upbringing.  This young person was really on his own.  These factors mitigate his failings.  Mr. Obidare understands that he compounded these problems with poor choices. But he is maturing and moving on, away from his previous life.  He has accepted responsibility for his actions.  Mr. Obidare engaged in conduct that was widespread in his country. It was easy for him to adopt practices that, although illegal, he saw others succeeding with no consequence. He was able to rationalize it.  And his gain was minimal compared to others.  He could not comprehend the harm that he was causing.  His offense is a serious one.  Even so, Mr. Obidare's upbringing is relevant in understanding the circumstances of his offense.

These factors support a downward variance.  *See United States v. Brown,* 667 Fed. Appx. 884, 886 (8th Cir. 2016) (upholding sentence in which district court considered defendant's difficult upbringing and the progress he made while in prison).  Mr. Obidare's personal history, his remorse and his attitude as a person today all support a downward variance.

### C. The Need For The Sentence To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense As Well As To Afford Adequate Deterrence To Criminal Conduct And To Protect The Public From Further Crimes Of The Defendant Do Not Outweigh The Other Pertinent Factors.

In determining the appropriate sentence under §3553(a), the Court must weigh the other factors with the need for the sentence to reflect the seriousness of the offense, to provide just

5

punishment, to deter possible future criminal conduct and to protect the public from further crimes. 18 U.S.C. §3553(a) further requires that the Court, after considering the factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing-just punishment, deterrence, protection of the public and rehabilitation of the defendant. As the Supreme Court explained, this "parsimony" clause represents the "overarching provision" of the statute. *Kimbrough v. United States,* 128 S.Ct. 558, 570 (2007); *see also United States v. Ferguson,* 456 F.3d 660, 667 (6th Cir. 2006) (stating that the parsimony provision serves as "the guidepost for sentencing decisions post-*Booker*").

Mr. Obidare will undoubtedly be deported to Nigeria because of his felony convictions. The Court has the discretion to consider this factor in determining whether Mr. Obidare is worthy of a downward variance. *See United States v. Sigala,* 521 F.3d 849, 851-52 (8th Cir. 2008). "A district court does not abuse its discretion in declining to vary downward based on, among other things, the fact that a defendant faces removal." Conversely, this Court may consider deportation in analyzing whether to grant a downward variance.

## CONCLUSION

Mr. Obidare's mom passed away on May 7, 2022. She was 57 years old. He has not had the opportunity to go home to mourn his mother. Mr. Obidare has committed crimes. He has lacked judgment. But he has served the past 15 months and three days in the Sherburne County Jail during Covid-19 without incident. Given the factors above, a sentence of 50 months is sufficient but not greater than necessary to satisfy the §3553(a) factors.

Date:  August 30, 2022                            Respectfully submitted,

                                       By:   */s/ Piper Kenney Wold*
                                              Piper Kenney Wold (#275621)
                                              331 Second Avenue South, Suite 705
                                              Minneapolis, MN 55401
                                              (612) 599-5545
                                              *Attorney for Defendant*